**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **EPIC TECH, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Case No. 4:15-cv-01220** |
| **v.** | § | |
| | § | |
| **FRANK LARA and PC SWEEPS, LLC,** | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT,
APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING
ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Epic Tech, LLC ("Plaintiff" or "Epic Tech") hereby files this Original Verified Complaint, Application for Emergency Temporary Restraining Order, and Request for Injunctive Relief against Defendants Frank Lara ("Lara") and PC Sweeps, LLC ("PC Sweeps"; collectively "Defendants"), and would respectfully show the Court as follows:

**I.
INTRODUCTORY STATEMENT**

1.     Plaintiff is a developer and marketer of promotional software programs and games that are used in several states throughout the country. Plaintiff exclusively licenses its software in Texas to certain third parties, who in turn distribute the software to local establishments. Plaintiff has recently discovered that Defendants have gained unauthorized possession of Plaintiff's proprietary sweepstakes software, and have engaged in a scheme to secretly modify, copy, and distribute the software to unauthorized third parties within the state of

Texas. Defendants do not have a license or any other lawful right to Plaintiff's software, and this conduct violates Plaintiff's rights and Texas law. Therefore, Plaintiff now brings this action and seeks, among other things: (1) a temporary restraining order to enjoin Defendants from continuing to use, copy, distribute, or misappropriate Plaintiff's software, including any altered version of its software or servers, (2) the return of all stolen software and equipment, and (3) recovery of damages and attorneys' fees.

## II.
## PARTIES

2.      Plaintiff Epic Tech, LLC is a limited liability company organized under the laws of the State of Delaware that has its principal place of business in the State of Georgia.

3.      Defendant Frank Lara is an individual residing in Galveston County, Texas, and may be served with process at 2601 N. Repsdorph Road, Apartment 711 Seabrook, Texas 77586-6513, or wherever he may be found.

4.      Defendant PC Sweeps, LLC is a business incorporated under the laws of the State of Texas and maintains its principal place of business in Kemah, Galveston County, Texas. PC Sweeps may be served with process by serving its registered agent, Frank Lara, at 114 Marina Oaks Drive Kemah, Texas 77565; or wherever it may be found.

## III.
## JURISDICTION AND VENUE

5.      This action arises, at least in substantial part, under the copyright and trademark laws of the United States, 17 U.S.C. § 101 *et seq*. and 15 U.S.C. § 1051 *et seq.*

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338.  Additionally, this Court has jurisdiction over the state law claims alleged herein under 28 U.S.C. §§ 1338 and 1367, because these claims are joined with related claims arising under the

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**                                                    **Page 2**
**APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING**
**ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**

laws of the United States and because the claims are so related to the federal claims that they form part of the same case and controversy.

7.      Pursuant to Section 24.007, *et seq.* of the Texas Government Code, this Court has subject matter jurisdiction over this action by virtue of the relief sought herein, and because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

8.      The Court has personal jurisdiction over Defendants because they each reside in and conduct business in Texas. In addition, the Defendants' unlawful conduct is taking place within at least this judicial district.

9.      Venue in this district and division are proper pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## IV.
## FACTUAL ALLEGATIONS

10.      Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff's factual allegations, as set forth herein, are verified through the sworn declaration of Jason Queen (attached as Exhibit 1); the sworn declaration of James Fierro (attached as Exhibit 2); the deposition transcript of Robert Cavazos (attached as Exhibit 3); the deposition transcript of Kevin Frank (attached as Exhibit 4); and the deposition transcript of Richard Schappel (attached as Exhibit 5).

**A.      Epic Tech's Sweepstakes Software.**

11.      Plaintiff is a developer and marketer of promotional software. In conjunction with its affiliates, it has developed many proprietary software programs. One of these software programs is called Legacy. The Legacy system, however, is not distributed by Plaintiff in Texas.

12.      The Legacy software is designed to be used as a promotional tool for independent businesses that sell valuable goods and services.  When used in accordance with applicable laws, the Legacy product is an effective promotional tool. Customers of the businesses who are

licensed to use the Legacy product are provided entries into a server-based sweepstakes either through the making of a qualified purchase or after following the rules and regulations of the sweepstakes to request entries free of charge. Patrons can then either reveal the results of their entries through using entertaining games available on the computer terminals, or by requesting that the results be immediately revealed. The odds of winning are not affected by whether a patron makes a charitable donation or uses the entertaining graphics to reveal whether a prize was won.

13.     The Legacy system is designed to be hosted on a local network consisting of: (1) a server, (2) a point of sale terminal, (3) computer terminals for use by customers, and (4) a management terminal ("the <u>System</u>"). The Legacy software is used by each hardware component of the System in order to facilitate the proper functioning of the System, thus it is an integrated system comprised of multiple individual parts.

14.     While the Plaintiff's Legacy system is not distributed in Texas, below are screen shots of two of Plaintiff's representative Legacy game menus, where patrons can choose a game to play to reveal the results of their sweepstakes entries:





Each of these games includes unique graphics and icons that allow customers to reveal whether they won prizes in an entertaining fashion. For example, the screen shot below depicts one such game, called "Ritzy Kitty":



15. In addition to these games, the system integrates a second promotional system, known as "Community Prize." This system allows customers to participate in a second sweepstakes pool, which uses a countdown eligibility timer. The Community Prize icon can be seen in the lower left hand corner of the screen shot above, which is blown up in the picture below:

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**
**APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING**
**ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**

**Page 5**



16.     The core of the software is a complex, proprietary system of server-based software that contains the foundational structure for the functioning of the entire sweepstakes system including, but not limited to, highly confidential mathematical formulas developed to conduct the sweepstakes. The code forming this core of the product is never seen by patrons or customers participating in the sweepstakes.  It is not even available to businesses that license use of the sweepstakes system. Access to the server is only available to high security level employees of Epic Tech, via sophisticated password protection mechanisms. In addition, the system includes a variety of entertaining games, which all have proprietary names, themes, images, sounds, and even music.

17.     Plaintiff's sweepstakes software was developed from scratch and is unique in the marketplace. Each system includes certain unique and/or hidden features that are a result of the way it was developed and designed. Some of these features are visible to customers (store owners, managers, cashiers, etc.) and/or game participants. Other characteristics of the software are only visible in the code and database structure itself, and can only be accessed by a trained software engineer with access to and knowledge of the code.  Plaintiff designed these measures specifically to safeguard its intellectual property and to prevent illegal copying or piracy of the software.

18.     The software system is an integrated combination of elements that all function together to deliver the customer sweepstakes experience described above. Plaintiff has devoted substantial time and resources to the design of the system. Competition is fierce in the industry

of computer-based sweepstakes promotions.  Competitive advantage in the industry is largely dependent upon the quality of the customer experience using the sweepstakes software.  As a result, Epic Tech has devoted substantial resources and time to the invention of images and game themes used by the software.

19.      Plaintiff has gone to great lengths to ensure that its software, trade secrets, and confidential and proprietary information is protected from public disclosure and dissemination. To this end, Plaintiff currently includes a "kill code" in the software versions that it licenses, which disables the software in the event that the server is taken offline (which is unauthorized) for more than three days. Further, Plaintiff uses all possible means to repossess any servers, which are always owned by Plaintiff and never by the end user, whenever that licensing relationship ends.

**B.**      **Epic Tech's Intellectual Property Protections.**

20.      All of the software for the Epic System, including the images, sounds, and functions of the software, is an original work of authorship, and Plaintiff is the sole and exclusive holder of all rights in and to the software, including all elements of the software system.

21.      Plaintiff owns copyright registrations and pending applications for various icons, graphics, images, and screens used in connection with this software. Attached to the Complaint as Exhibit 6 are federal trademark registrations and an exclusive software license that were obtained by and assigned to Epic Tech.

22.      For example, one of the games available through the Legacy system is entitled "Lucky Duck" and the following screen shot depicts this game:



In connection with images specially designed to be used in Lucky Duck, Plaintiff is the owner of multiple copyright registrations, including Copyright Registration Nos. VA0001779211 (bell), VA0001779200 (cherries), VA0001745520 (lucky duck game icons and screens), SR0000680525 (lucky duck music), PA0001828303 (lucky duck screen displays), and VA0001779212 (watermelon). In addition, on September 28, 2010, Plaintiff registered U.S. Trademark Registration No. 3,853,565 in connection with Lucky Duck for the Lucky Duck Registered Logo:



23.     Epic Tech has invested substantial sums of money in developing and promoting the Lucky Duck trademarks as well as the underlying goodwill associated therewith. In addition, Epic Tech currently uses the Lucky Duck trademarks in commerce in connection with gaming systems.

24.     Plaintiff also owns Copyright Registration No. VA0001943259 for the game Ritzy Kitty. These copyright registrations are collectively referenced herein as the "Epic Tech

Copyright Registrations." True and accurate copies of the copyright registration information for these copyrights are attached hereto as Exhibit 7 and incorporated herein by reference.

25.     Epic Tech is also the holder of U.S. Trademark Registration No. 3,782,626 for the name REEL CATS ("Reel Cats Registered Trademark"). The application for registration was filed on May 14, 2009 and the trademark registration was issued on April 27, 2010.

26.     Epic Tech has invested substantial sums of money in developing and promoting its REEL CATS trademarks as well as the underlying goodwill associated therewith.

27.     Copies of the federal trademark registration for the Lucky Duck Registered Logo and the Reel Cats Registered Trademark are attached hereto as Exhibit 8 and incorporated herein.

28.     The LUCKY DUCK name, the Reel Cats Registered Trademark, the Lucky Duck Registered Logo (shown above), the Community Prize Logo (shown above), and the Reel Cats Logo (shown below) have been used by Epic Tech in connection with gaming systems, wherein these marks are collectively referenced as the Epic Tech Trademarks:



29.     The Epic Tech Trademarks are distinctive and as a result of licensing of electronic sweepstakes systems by Epic Tech, the Epic Tech Trademarks have developed and now have a secondary trademark meaning to purchasers and users of sweepstakes systems so that they have come to be recognized by the relevant consuming public as indicating Epic Tech as the source of such systems and games.

30.     In addition to the foregoing, Epic Tech is the holder of numerous other copyright registrations, registered trademarks, and patents related to and invented as components of the Epic Tech software system.

**C.      Defendants' Infringing Activities.**

31.     Plaintiff licenses Legacy and its other software to certain authorized distributors. Plaintiff and its authorized licensees have the exclusive right to license, use, and share Plaintiff's software. Plaintiff does not, however, license its Legacy software to any individuals or entities within the State of Texas.

32.     Defendants have obtained possession of a sweepstakes software system known as "Falcon," which is nearly an exact copy of Plaintiff's Legacy system. Defendants have no authorization to possess, use, copy, or distribute any of Plaintiff's software. Through means unknown to Plaintiff, Defendants have gained possession of a server or copy of a server containing Plaintiff's software, have altered the software to create certain immaterial differences in graphics, icons, and game configuration, and are distributing this copied software without Plaintiff's authorization.

33.     Plaintiff has discovered that Defendants have distributed Plaintiff's software through at least two channels, neither of which are licensed or otherwise authorized. First, Defendants distributed the Falcon software to North Loop Sweepstakes ("North Loop"), which has operated sweepstakes using the software without authorization. After discovering this rogue operation, Plaintiff filed suit against North Loop and its principals in February 2015 in El Paso County District Court, and obtained a temporary restraining order and permanent injunction that

enjoined the location from continuing to possess or use Plaintiff's software.[1]

34.     During that proceeding, Plaintiff deposed North Loop's owner, Robert Cavazos, who testified that Defendant Lara approached Cavazos in early 2014 and offered to provide the Falcon software to North Loop. Lara proceeded to install the software and pick up weekly cash payments from North Loop of 50% of all revenues derived from Falcon. Plaintiff has never been in business with Lara, provided him with its software, or offered him a license or other authorization to operate or distribute Plaintiff's software.

35.     The Falcon software distributed by Defendants to North Loop contains many identical or substantially similar images, graphics, themes, and functions as Plaintiff's Legacy software. Prior to bringing suit against North Loop, Plaintiff retained a private investigator to visit the location and take pictures of the infringing software. The following screen shots compare Defendants' Falcon software as operated at North Loop with Plaintiff's Legacy software, and demonstrate that the two systems are materially identical:

<u>Direct Copying and Infringement of Lucky Duck Game</u>



<hr />

[1] *See Red Rock Investments, LLC, and Epic Tech, LLC v. North Loop Sweepstakes, RKT Management, Inc., Hayward Rigano, Robert Cavazos, Jr., and Kevin Frank*, Cause No. 2015DCV0546in the 327th District Court of El Paso County, Texas.

Direct Copying and Infringement of Sweepstakes Paytable



Direct Copying and Infringement of Reel Cats Game



36.     These screen shot comparisons confirm without doubt that Defendants have distributed software to North Loop that is directly copied from Plaintiff's software. The graphics, icons, game structure and function, and paytables are all materially identical. The only reasonable inference is that Defendants' software is copied or substantially derived from the same core software code as Plaintiff's software.

37.     Furthermore, Defendants aided North Loop in operating a sweepstakes that, upon information and belief, had identical game odds, paytables, help screens, and sweepstakes structure as Plaintiff's sweepstakes system. Defendants assisted in operating North Loop's sweepstakes and obtained a percentage of its revenues.

38.     Second, Plaintiff has discovered that Defendants have distributed the Falcon software to numerous sweepstakes locations in North Carolina and Florida. In March 2015, Plaintiff brought suit in United States District Court for the Middle District of North Carolina, Cause No. 1:15-CV-252, against the operators of sweepstakes locations in North Carolina that are using Plaintiff's software without license or authorization. While conducting expedited discovery in that action, Plaintiff deposed Kevin Frank and Richard Schappel, who both testified that Defendant Lara distributed the Falcon software to them for the infringing North Carolina locations. In addition, Schappel testified that Lara was responsible for activating the software at each location, that Lara received five percent of the net revenues from each location, and that Lara falsely represented that he had developed the software.

39.     Just as with North Loop, the North Carolina locations operate software with game odds, pay tables, rules, and help screens that are duplicates of Plaintiff's software.  Artwork used by the Falcon software is identical or substantially similar to copyrighted art work owned by Plaintiff.  By way of example, below are side by side comparisons of images from Plaintiff's software and the Falcon software, as operated at an infringing location in Rockingham County, North Carolina:

| Plaintiff's System | Defendant's Falcon Software |
|---|---|



| Plaintiff's System | Defendant's Falcon Software |
|---|---|



40.     These screen shots demonstrate that the Falcon software Defendants distributed to North Carolina are also copied from Plaintiff's software. Defendants' Falcon software was not legally obtained from Plaintiff or any other authorized distributor of the Plaintiff's software. Defendants' unauthorized possession, use, and distribution of Plaintiff's software have caused significant and irreparable harm to Plaintiff. Indeed, Defendants' infringement of Plaintiff's intellectual property rights harms Plaintiff, as customers who might otherwise elect to license or use Plaintiff's software may elect to license or use the infringing sweepstakes gaming systems and devices. In addition, by distributing and offering Plaintiff's software without Plaintiff's oversight and approval, Defendants are exposing Plaintiff to potential legal exposure given that sweepstakes are a highly regulated industry in Texas.

41.     Upon information and belief, Defendant Lara acts through Defendant PC Sweeps with respect to the events in question.

42.     Plaintiff therefore brings these claims and application for injunctive relief against Defendants to enjoin continued infringement and misappropriation of Plaintiff's software, to secure the return of all copies of the software or servers in the Defendants' possession, and to recover money damages and attorney's fees.

## V.
## NECESSITY OF EX-PARTE RELIEF

43.     Defendants have utilized improper means to obtain Plaintiff's property, and have flagrantly continued to alter, operate, use, and distribute it for their own financial benefit. The servers and software, and any copies thereof, are highly mobile and can be removed or hidden with even a brief notification, and the software associated therewith is highly mobile and can be relocated on a moment's notice. On several previous occasions, Plaintiff has learned that its software was being operated and sold without license and the infringing party hid the software after being notified that Plaintiff was pursuing legal action. Therefore, Plaintiff seeks ex-parte relief so that the software and servers can be retrieved by an authorized constable or law enforcement officer until an appropriate hearing on the merits of Plaintiff's claims.

## VI.
## CAUSES OF ACTION

<u>First Cause of Action:</u> Copyright Infringement.

44.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

45.     Plaintiff is the owner of the Epic Tech Copyright Registrations.

46.     Upon information and belief, none of the games in the Falcon software being used by Defendants were independently developed or invented by Defendants, but instead were illegally pirated or copied from Plaintiff's software.

47.     Defendants, without authority, and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Plaintiff by, among other things, copying, reproducing, possessing, altering, selling, distributing, infringing, publicly displaying, disclosing, and/or otherwise using and participating in the unauthorized reproduction and display of copyrighted material belonging to Plaintiff without the express or implied consent of Plaintiff.

48.     Defendants knew or reasonably should have known that the software and the works protected by Plaintiff's Copyright Registrations that they were using were protected by copyright.

49.     Defendants' infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

50.     Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, et seq.

51.     Defendants' infringing activities continue through the date of the filing of this complaint.

52.     As a direct and proximate result of Defendants' copyright infringement, Plaintiff has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law.  Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Plaintiff.

53.     As a direct and proximate result of its wrongful conduct, Defendants have realized and will continue to realize profits and other benefits rightly belonging to Plaintiff. Accordingly Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. §

504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, to be proven at trial.

54.     Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**<u>Second Cause of Action:</u> Trademark Infringement of Federally Registered Trademarks.**

55.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

56.     Plaintiff owns the trademark registrations for the Lucky Duck Registered Logo and the Reel Cats Registered Trademark.

57.     Defendants' uses of Plaintiff's federally-registered Lucky Duck Registered Logo and Reel Cats Registered Trademark in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities with or by Plaintiff, and such use therefore infringes Plaintiff's trademarks.  Such actions violate the provisions of 15 U.S.C. § 1114.

58.     Upon information and belief, Defendants' continued infringing conduct is knowing, intentional, and willful.

59.     As a direct and proximate result of Defendants' trademark infringement, Plaintiff has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law.  Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Plaintiff.

**Third Cause of Action:** **Federal Unfair Competition, False Designation of Origin, and False Advertising.**

60.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

61.     The Epic Tech Trademarks function as trademarks, are distinctive, and are protectable as common law trademarks as a result of distinguishing Epic Tech's games from the games of others.

62.     Prior to Defendants' actions, the Epic Tech Trademarks have been used on Plaintiff's software system in commerce to distinguish those products, including by displaying the marks on gaming systems, and Epic Tech has not abandoned such marks.

63.     The Epic Tech Trademarks are distinctive and, in addition to being inherently distinctive, and as a result of sales of gaming systems by Epic Tech (and/or Epic Tech's licensees and previous owners of the Epic Tech Trademarks), the Epic Tech Trademarks have developed and now have a secondary trademark meaning to purchasers and users of gaming systems so that they have come to be recognized by the relevant consuming public as indicating Epic Tech as the source of such gaming systems and games.

64.     Defendants have provided gaming systems and games to customers using identical or confusingly-similar representations of the Epic Tech Trademarks.

65.     Upon information and belief, Defendants acted knowingly and intentionally in adopting the Epic Tech Trademarks and or confusingly-similar variations and has attempted to trade off the goodwill owned by Epic Tech.

66.     Defendants' actions constitute unauthorized use in commerce of a colorable variation of the Epic Tech Trademarks in a manner that is likely to cause confusion as to source,

sponsorship, or affiliation. Therefore, such actions constitute a violation of Epic Tech's common law rights in the Epic Tech Trademarks.

67.     The foregoing acts and conduct by the Defendants constitute false designation of origin, passing off and false advertising in connection with products distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68.     Epic Tech will suffer irreparable harm unless Defendants' unlawful conduct is enjoined.  As a proximate result of Defendants' actions, Epic Tech has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the Epic Tech Trademarks.  The injury to Epic Tech is ongoing, continuous and irreparable.  A monetary award of damages alone cannot fully compensate Epic Tech for its damages caused by Defendants, and Epic Tech lacks an adequate remedy at law.

**Fourth Cause of Action: Common Law Trademark Infringement and Common Law Unfair Competition.**

69.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

70.     The Epic Tech Trademarks function as trademarks, are distinctive, and are protectable as common law trademarks as a result of distinguishing Epic Tech's games from the games of others.

71.     Prior to Defendants' actions, the Epic Tech Trademarks have been used on Plaintiff's software system in commerce to distinguish its products, including by displaying the marks on gaming systems, and has not abandoned such marks.

72.     The Epic Tech Trademarks are inherently distinctive, and as a result of sales of gaming systems by Epic (and/or Epic Tech's licensees and previous owners of the Epic Tech Trademarks), the Epic Tech Trademarks have developed and now have a secondary trademark

meaning to purchasers and users of gaming systems so that they have come to be recognized by the relevant consuming public as indicating Epic Tech as the source of such gaming systems and games.

73.     Defendants have provided gaming systems and games to customers using identical or confusingly-similar representations of the Epic Tech Trademarks.

74.     Upon information and belief, Defendants acted knowingly and intentionally in adopting the Epic Tech Trademarks and or confusingly-similar variations and has attempted to trade off the goodwill owned by Epic Tech.

75.     Defendants' actions constitute unauthorized use in commerce of a colorable variation of the Epic Trademarks in a manner that is likely to cause confusion as to source, sponsorship, or affiliation. Therefore, such actions constitute a violation of Epic Tech's common law rights in the Epic Tech Trademarks.

76.     Epic Tech will suffer irreparable harm unless Defendants' unlawful conduct is enjoined.  As a proximate result of Defendants' actions, Epic Tech has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the Epic Tech Trademarks.  The injury to Epic Tech is ongoing, continuous and irreparable.  A monetary award of damages alone cannot fully compensate Epic Tech for its damages caused by Defendants, and Epic Tech lacks an adequate remedy at law.

**Fifth Cause of Action: Contributory and Vicarious Copyright Infringement.**

77.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

78.     Plaintiff is the owner of the Epic Tech Copyright Registrations and the Epic Tech Trademarks.

79.     Defendants, without authority and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Plaintiff by, among other things, inducing, encouraging, and/or contributing to third parties, including sweepstakes locations such as North Loop, to infringe, operate, and otherwise use the unauthorized reproduction and display of copyrighted material belonging to Plaintiff without the express or implied consent of Plaintiff.

80.     Upon information and belief, Defendant Lara had the right and ability to supervise the copyright infringing activities of at least PC Sweeps and also had and has a direct financial interest in such activities.  As such, Lara is vicariously liable for the infringing activity of at least PC Sweeps.

81.     Defendants knew or reasonably should have known that the software and the works protected by Plaintiff's Copyright Registrations that they were using were protected by copyright and of the infringing activity of other persons and entities that they were aiding.

82.     Defendants' aiding of this infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

83.     Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, et seq.

84.     Defendants' aiding of these infringing activities continue through the date of the filing of this complaint.

85.     As a direct and proximate result of Defendants' aiding of this copyright infringement, Plaintiff has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law.   Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Plaintiff.

86.     As a direct and proximate result of its wrongful conduct, Defendants have realized and will continue to realize profits and other benefits rightly belonging to Plaintiff. Accordingly Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, to be proven at trial.

87.     Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Sixth Cause of Action: Contributory and Vicarious Trademark Infringement and Unfair Competition.**

88.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

89.     Plaintiff owns the trademark registrations for the Lucky Duck Registered Logo and the Reel Cats Registered Trademark and owns rights in the Epic Tech Registered Trademarks.

90.     Upon information and belief, Defendants contributed to or induced others, including sweepstakes locations such as North Loop, to commit trademark infringement and unfair competition and/or knew or had reason to know of the impermissible activity of such persons and directly or indirectly supplied materials, including servers, gaming systems, and/or software, to such persons.  As such, Defendants are contributorily liable for trademark infringement and unfair competition .

91.     Upon information and belief, Defendant Lara and Defendant PC Sweeps have an apparent or actual partnership, authority to bind one another, and/or joint ownership or control over the accused product herein.  As such, Lara is vicariously liable for the infringing activity of Defendant PC Sweeps.

92.     Upon information and belief, Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

93.     As a direct and proximate result of Defendants' aiding of trademark infringement, Plaintiff has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law.  Unless immediately restrained and enjoined, Defendants will continue to engage in the.

**<u>Seventh Cause of Action:</u> Unfair Competition / Misappropriation, Wrongful Disclosure and Use of Trade Secrets and Confidential and Proprietary Information.**

94.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

95.     Through considerable expenditures of time, labor, skill, and money, Plaintiff created numerous trade secrets, and confidential and proprietary information relating to its software and games, including the software code.

96.     Plaintiff provides certain third parties with an exclusive license to distribute, use, and share this software in Texas. Plaintiff provides these licenses, in part, to ensure that the licensees operate their establishments, and use Plaintiff software, within the laws of the State of Texas. Because of Defendants' conduct, Plaintiff cannot ensure that software that is similar to its own is being used in accordance with the law, exposing Plaintiff to potentially unwarranted prosecution.

97.     Defendants misappropriated Plaintiff's trade secrets and confidential and proprietary information with the knowledge that they did not have authorization to use such information.

98.     Defendants acquired and subsequently used Plaintiff's trade secrets and confidential and proprietary information through improper means. Defendants improperly

obtained Plaintiff's copyrighted software, altered it, and used it to their own commercial advantage.

99.     Defendants have also used Plaintiff's trade secrets and confidential and proprietary information to unfairly compete with Plaintiff. By distributing Plaintiff's software, Defendants deliberately confuse the market, and diminish the value of Plaintiff's legitimate software.

100.     This theft, misappropriation, and disclosure of Plaintiff's trade secrets and confidential and proprietary information has caused Plaintiff damages in an amount within the jurisdictional limits of this Court, both general and special, including the lost profits of Plaintiff and/or the profits gained by Defendants.

101.     Because the conduct complained of herein was intentional and malicious, Plaintiff further seeks exemplary damages against Defendants for the unfair competition and misappropriation of its trade secrets and confidential and proprietary information in an amount to be determined by the trier of fact.

**Eighth Cause of Action: Conversion.**

102.     Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

103.     Plaintiff had a right to immediate possession of, among other things, Plaintiff's gaming software, associated servers, images, graphics, and screen shots, and its trade secrets and confidential and proprietary information (the "Misappropriated Information").

104.     Defendants wrongfully exercised dominion and control over the Misappropriated Information taken by Defendants, and converted same to their own use to the exclusion of Plaintiff, or inconsistent with Plaintiff's rights.

105.    Defendants did not acquire possession of the Misappropriated Information by legal means. Without Plaintiff's authorization, Defendants continue to unlawfully retain possession of, exercise dominion and control over, and use the Misappropriated Information inconsistent with Plaintiff's rights.

106.    Defendants' wrongful conversion of the Misappropriated Information has proximately caused Plaintiff to suffer damages.

107.    Because Plaintiff's injury resulted from Defendants' malice and/or intentional conduct, Plaintiff is entitled to seek, and to recover, exemplary damages from Defendants under Texas Civil Practice & Remedies Code § 41.003(a) in amounts to be determined by the trier of fact.

**Ninth Cause of Action:** **Application for Temporary Restraining Order, and Temporary and Permanent Injunction.**

108.    Plaintiff incorporates by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

109.    The relative equities of the parties are best served by permanently enjoining Defendants' actions in using, copying, possessing, or distributing Plaintiff's software.

110.    Given Defendants' intentional and widespread misappropriation, conversion, and theft of Plaintiff's trade secrets and confidential and proprietary information, it is likely that, unless enjoined, Defendants will retain, use, distribute, and/or continue distributing Plaintiff's confidential information. Plaintiff seeks the Court's protection to protect further dissemination, disclosure, or use of its trade secrets and confidential information or proprietary information.

111.    Based on the foregoing, Plaintiff has shown a probable right to recovery. In addition, it has no adequate remedy at law. Unless enjoined, Plaintiff will suffer, and will continue to suffer, clear, immediate, and irreparable injury from Defendants' use and distribution

of misappropriated trade secrets and confidential and proprietary information, including unfair competition with Plaintiff, and continued exposure to lawsuits such as this one.

112.    The harm and loss will continue unless this Court restrains, and ultimately permanently enjoins, this conduct. Plaintiff is therefore entitled to temporary and permanent injunctive relief. As requested below, Plaintiff respectfully requests the Court to enjoin Defendants from continuing to misappropriate, use, or distribute Plaintiff's software, or any Misappropriated Information, order Defendants to return all copies of such software wrongfully obtained in any current or former form or media, and order Defendants to disclose the identity and location of any third parties with whom Defendants have shared the software.

113.    The temporary restraining order should be granted *ex parte* because Plaintiff will suffer irreparable injury if Defendants are provided notice of this application before the order is granted. Specifically, Defendants are likely to relocate, copy, and further disseminate Plaintiff's software, the Misappropriated Information, and the Altered Plaintiff Software upon learning of the relief Plaintiff seeks.

## VII.
## REQUEST FOR RELIEF

WHEREFORE, premises considered, Plaintiff requests that judgment be entered against Defendants, and that Plaintiff be granted the following relief:

A.    An *ex parte* temporary restraining order and temporary injunction, thereafter to be made permanent, that:

1.    Enjoins Defendants, including Defendants' agents, employees, attorneys, representatives, and those persons or entities in active concert or participation with them, from using, disclosing, copying, sharing, relocating, transferring, or distributing to any individuals or entities Plaintiff's trade secrets, confidential and propriety information, or other information relating to Plaintiff's gaming software;

      2.      Orders Defendants to provide all copies of the software in their possession to any Marshall or law enforcement officer until a hearing on the merits.

B.      Judgment against Defendants for actual damages, in excess of $75,000, and exemplary, statutory, compensatory, and special damages.

C.      Recovery of pre- and post-judgment interest, attorneys' fees, and costs.

D.      Order a permanent injunction upon final trial of this cause enjoining Defendants as requested herein.

E.      All remedies as provided in 15 U.S.C. §§ 1117, 1118, and 1120.

F.      An accounting for damages.

G.      An award and/or imposition of constructive trust on all funds unjustly received by Defendants as a result of the acts alleged herein.

H.      Such other and further relief requested herein and/or as to which Plaintiff may be entitled.

Dated: May 7, 2015

Respectfully submitted,

/s/ *Brant C. Martin*
Brant C. Martin
  State Bar No. 24002529
  brant.martin@wickphillips.com
Joseph R. Callister*
  State Bar No. 24059054
  joseph.callister@wickphillips.com
Ethan A. Minshull*
  State Bar No. 24081045
  ethanminshull@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile:  (214) 692-6255

**ATTORNEYS FOR PLAINTIFF**

**\*Seeking admission to the Southern District of Texas**