United States District Court
Southern District of Texas
**ENTERED**
November 30, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EPIC TECH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-01220 |
| | § | |
| FRANK LARA, and | § | |
| PC SWEEPS, LLC | § | |
| | § | |
| Defendants. | | |

## OPINION AND ORDER

Pending before the Court in the above-referenced cause is Plaintiff Epic Tech's ("Epic") Motion for Default Judgment ("Motion") against Defendants Frank Lara, individually and PC Sweeps, LLC ("Lara and Sweeps"). Doc. 42. The Court previously entered a default against Lara and Sweeps on November 2, 2017. Doc. 48. After careful consideration of the filings, record, and law, the Court is of the opinion that the motion should be granted.

Epic alleges that Lara and Sweeps modified and distributed Epic's Legacy sweepstakes software in violation of Epic's registered copyrights and trademarks, unregistered trademarks, and that they misappropriated Epic's trade secrets. Doc. 1 at 1–2, 10. Epic seeks a default judgment on statutory damages for willful copyright and trademark infringement, seeks a permanent injunction against Lara and Sweeps's continuing use of Epic's Legacy sweepstakes software, and seeks attorney's fees, post-judgment interest, and costs. Docs. 1 at 28; 42 at 6–7.

**I. Background**

Epic owns Legacy, a proprietary sweepstakes software system, and various associated copyrights, trademarks, and trade secrets. Doc. 1 at 3–10. Some of these copyrights and trademarks are federally registered. *See id.* at 7–10. According to Epic, Legacy's software

system is a "promotional tool" where licensed businesses "provide[] entries into a server-based sweepstakes either through the making of a qualified purchase or after following the rules . . . of the sweepstakes." *Id.* at 3–4, ¶ 12. "Patrons can then either reveal the results of their entries through using entertaining games available on the computer terminals, or by requesting that the results be immediately revealed." *Id.*

Epic's complaint also explains how Legacy operates and how Epic protects its code from manipulation. Legacy operates across a network consisting of a server, a management terminal, a point of sale terminal, computer terminals for customers' use, and a management terminal. Doc. 1 at 4, ¶ 13. It features "highly confidential mathematical formulas" and source code that neither patrons nor businesses licensing Legacy may view. *Id.* at 6, ¶ 16. Instead, "[a]ccess to the server is only available to high security level employees of Epic Tech, via sophisticated password protection mechanisms," and a "kill code" can be used to "disable the software." *Id.* at 6–7. Utilizing this code, Legacy creates a "variety of entertaining games, which have proprietary names, themes, images, sounds, and even music." *Id.*

On May 7, 2015, Epic brought this lawsuit, alleging that Lara and Sweeps "gained unauthorized possession" of Epic's Legacy software, renaming it as "Falcon," and "have engaged in a scheme to secretly modify, copy, and distribute the software to unauthorized third parties within the state of Texas," North Carolina, and Florida.[1] *Id.* at 1–2, 10, 13. Attached to Epic's complaint are the sworn declarations of Jason Queen, Epic's Director of Information Technology, Doc. 2-1 at Ex. 1, and James Fierro, Epic's private investigator, *Id.* at Ex. 2; the

---

[1] Epic's suit against other defendants in the distribution scheme is detailed in two other suits. *See Epic Tech, LLC v. STHR Group, LLC*, No. 1:15CV252, 2015 WL 8179513 (M.D.N.C. Dec. 7, 2015), *report and recommendation adopted*, No. 1:15-CV-252, 2015 WL 9592522 (M.D.N.C. Dec. 31, 2015) and *Red Rock, et al. vs. North Loop Sweepstakes, et al.*, No. 2015DCV0546 (327th Dist. Ct., El Paso County, Tex.)

deposition transcripts of Robert Cavazos, an owner of an infringing sweepstakes parlor in Texas, *Id.* at Ex. 3, Kevin Frank, an installation and maintainer of Falcon terminals, *Id.* at Ex. 4 and Richard Schappel, a distributor of Falcon software, *Id.* at Ex. 5; an assignment of copyrights to Epic, *Id.* at Ex. 6; a copyright, *Id.* at Ex 7, and two trademark registrations, *Id.* at Ex. 8. Additional copyright and trademark registrations are attached to Epic's Motion for Default Judgment. Doc. 42 at Ex. 4, 5.

According to Queen, Epic's I.T. Director, Lara and Sweeps distributed "Falcon software," which is "directly copied from [Epic's] software." Doc. 2-1 at 3–6. Queen's allegation is based upon photographs taken by Fierro at a business location at 16097 N. Loop Dr., Ste E, Socorro, Texas 79927 ("North Loop"), and personal observations of Falcon's "management terminal software," as follows: Lucky Duck Game:



Sweepstakes Paytable:



Reel Cats Game:



Management Terminal:



*Id.* at 3–10, 14–16. Queen also claims that he personally observed Falcon software in multiple locations in North Carolina and Florida. *Id.* at 6. In addition to North Carolina and Florida, Queen "believes that the Falcon software is being distributed in other states including Arizona, California, and Colorado." *Id.* at 11.

Epic alleges that the depositions provide additional evidence of a scheme where Lara and Sweeps would distribute and install Falcon software, and then retrieve a portion of the revenue.

Doc. 1 at 11, 13. According to the deposition of Cavazos, Lara installed the software at North Loop, and picked up a weekly cash payment of 50% of revenues derived from Falcon. Doc. 2-1 at 54:5, 59:7–10, 88:5–12, Ex. 3. According to the depositions of Frank and Schappel, Lara distributed the software to them for installation, Lara activated the software, and Lara received 5% of profits. *Id.* at Ex. 4, 5.

Queen alleges that Epic owns the copyrights for the above software and icons. Relevant to the default judgment, Queen alleges that Epic owns these five copyrights for the Lucky Duck game and one for the Ritzy Kitty game: Copyright Registration Nos. PA0001828303 (lucky duck screen displays), VA0001745520 (lucky duck game icons and screens), VA0001779200 (cherries), VA0001779211 (bell), VA0001779212 (watermelon), and VA0001943259 (Ritzy Kitty). *Id.* at 3; Doc. 42 at 13–14. According to the exhibits attached to the motion for default judgment and a supplement to that motion, Epic owns each of these copyrights through assignment, conveyance, or direct copyright claim. Docs. 42-4, Ex. 4 (copies of copyright filings); 2-1 at 368–372, Ex. 6 (assignment of copyrights to Epic); 50. While, the supplemental filing walks through the transfer of the copyright claims from filing to Epic, we do not include this roadmap in the opinion because the Court granted Epic's motion to seal the supplemental filing. Doc. 50.

Queen also alleges that Epic owns two federal trademarks for the Lucky Duck, U.S. Trademark Registration No. 3,853,565, and Reel Cats games, U.S. Trademark Registration No. 3,782,626. Doc. 2-1 at 3. The below example screen shots were taken from Falcon software used in North Carolina:



According to the exhibits attached to the motion for default judgment, Gateway Gaming, LLC registered federal trademarks for Lucky Duck and Reel Cats, and later assigned those trademarks to Epic. Doc. 42-5, Ex. 5. Epic also alleges common law trademarks for Storefront and Community Prize, but Queen only references other "registered trademarks." Docs. 1 at 9, ¶ 28; 2-1 at 4, ¶ 11, as follows:





| Epic Tech Common Law Trademarks | Defendants' Infringing Mark |

Doc. 1 at 14.[2]

Finally, Queen alleges that the similarities of the management terminal software of both Falcon and Legacy proves that Falcon used a copy of Legacy's computer code, which is Epic's trade secret. *Id.* at 8–11.

Thus, Epic sued Lara and Sweeps alleging that they willfully infringed on six of Epic's copyrights under 17 U.S.C. § 501, two trademarks under 15 U.S.C. § 1114, two common law trademarks under state law, and its trade secret computer code. *Id.* at 15–29; Doc. 42 at 6–7.

Epic effected service on Lara and Sweeps. On May 13, 2015, Epic served Lara under Rule of Civil Procedure 4(e)(2)(B) by leaving copies of the Complaint and Summons with someone of suitable age and discretion who resides at Lara's residence. Doc. 17. On the same date, Epic served Sweeps under Rule of Civil Procedure 4(h)(1)(B) by effecting service on Lara, the president of Sweeps, and by delivering a copy of the summons and of the complaint to Ms. Holseth, Accounts Manager of Sweeps. Doc 18.

On April 7, 2017, Epic moved for default judgment against Laura and Sweeps, seeking statutory damages for willful conduct, a permanent injunction, and attorney's fees. Doc. 42. Under the Local Rules of the Southern District of Texas, Epic served the motion for default judgment upon the Defendants via certified mail, with return receipt requested. *Id.* at 26, *see also*

---

[2] At the November 15, 2017 hearing, counsel for Epic clarified that the Reel Cats Logo was federally trademarked, and any reference to a Reel Cats Logo common law trademark was a scrivener's error. Instead, Epic's other common law trademark was the storefront image. Docs. 1 at 9 ¶ 28; 42 at 22.

S.D. Tex. L.R. 5.5. Defendants failed to respond to the motion for default judgment.

On November 15, 2017, the Court held a hearing on the default judgment motion, offering parties an opportunity to focus the Court's attention on supporting or detracting evidence. Lara and Sweeps did not appear. Counsel for Epic appeared to support their argument for willful statutory damages. In support of its assertion that Lara and Sweeps's infringement was willful, Epic called the Court's attention to the sophistication of Lara and Sweeps's distribution scheme, which indicated a familiarity with licensing laws.

Epic also asserted that Lara knew that Epic was asserting a copyright infringement case and intentionally chose not to participate in this suit because Schappel spoke to Lara about the related North Carolina lawsuit. According to his deposition, Schappel had a "heated conversation" where he told Lara that "[Epic] had filed suit on a couple of locations in North Carolina, that [Epic was] alleging copyright infringement . . . [and] [t]hat I was absolutely going to tell them where I got it." Doc. 2-1 at 326–27. Schappel also stated in the deposition that Lara "wasn't very happy that I was telling him those things," but that Lara said "that it wasn't going to be a problem." *Id.* at 327. Thus, Epic contends that Lara knew of potential copyright accusations, but chose not defend himself or his company.

Epic also provided of two estimations of their actual damages: monthly and total damages. Based upon their client's representations, counsel to Epic alleged that each infringing machine would generate $3 per day in profit, and each location would have dozens of machines. Epic alleges that the combined machines in a storefront location would net approximately $50,000 a month. Considering the size of the distribution scheme and multiple locations, Epic estimates that Lara and Sweeps converted approximately $15 million. Thus, Epic asserts that asking for the statutory maximum of $4.9 million is a reasonable statutory damage award.

## II. Legal Standards and Discussion

Epic seeks a default judgment on statutory damages for willful copyright and trademark infringement, seeks a permanent injunction against Lara and Sweeps's continuing use of Epic's Legacy sweepstakes software, and seeks attorney's fees. Doc. 42 at 6–7

### A. Default Judgment

Rule 4 of the Federal Rules of Civil Procedure requires the plaintiff to serve a copy of the summons and complaint on the defendant. Fed. R. Civ. P. 4(c)(1). If the opposing party then fails to plead or otherwise defend as required by law, the serving party is entitled to entry of a default by the clerk of the court. Fed. R. Civ. P. 55(a). Following entry of the clerk's default, the Court may enter a final default judgment. Fed. R. Civ. P. 55(b). Local Rule 5.5 requires that a motion for default judgment be served upon the defendant via certified mail, return receipt requested. S.D. Tex. L.R. 5.5.

However, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When considering the motion for default judgment, the court should accept as true all well-pleaded allegations of fact in the complaint and a defendant is barred from contesting those facts on appeal. *Id.*; *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (holding that a defendant does not admit facts that are not well-pleaded or to admit conclusions of law.) As to damages, a default judgment may be entered if the plaintiff's claim is for a sum certain or a sum which can be made certain by computation; otherwise, the court must hold a hearing to determine the appropriate award. *Richardson v. Salvation Army*, 161 F.3d 7, *1 (5th Cir. 1998).

To determine if a default judgment should be entered against a defendant, courts apply a two-step analysis. *Entizne v. Smith Moorevision, LLC*, No. 3:13–CV–2997–B, 2014 WL 1612394, at *1 (N.D. Tex. Apr. 22, 2014) (citing *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C10–390, 2011 WL 4738179, at *2–3 (S.D. Tex. Oct. 5, 2011)). First, the court decides whether entry of default judgment is appropriate under the circumstances. *Id*. (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The court considers the following factors to resolve the issue: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would find itself obliged to set aside the default on the defendant's motion. *Id*. As a second step, the court weighs the merits of the plaintiff's claims and must find an adequate basis in the pleadings to support a default judgment. *Id*. (citing *Nishimatsu*, 515 F.2d at 1206).

Here, Epic satisfied Local Rule 5.5 by mailing a copy of the request for entry of default and the motion for default judgment to the defendant via certified mail, return receipt requested. Doc. 42 at 31. Defendants, by failing to answer or otherwise respond to Epic's complaint, have admitted the well-pleaded allegations in the Complaint and are thus precluded from contesting the established facts on appeal. *See Nishimatsu*, 515 F.2d at 1206. Also, applying the six-factor default-judgment test to this case, the Court finds: (1) there are no material facts in dispute because Lara and Sweeps failed to file an answer or any responsive pleading in this action; (2) Lara and Sweeps's failure to respond threatens to bring the adversary process to a halt, thereby effectively prejudicing Epic's interests; (3) service of process was executed against both Lara and Sweeps on May 13, 2015; (4) there is no evidence before the Court suggesting that Lara and

Sweeps's failure to appear or file anything is the result of a good faith mistake or excusable neglect; (5) the nearly two years and six months that have passed since Epic filed its original complaint mitigates the harshness of a default judgment; (6) considering all supporting affidavits and other documentary evidence, the Court finds that Epic is seeking relief to which it is entitled, and the Court knows of no facts that would constitute good cause to set aside a default judgment. Thus, it finds entry of default judgment to be appropriate pursuant to the factors above.

Next, the Court determines if the pleadings support a default judgment. To establish liability for copyright infringement, Epic must show, "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501; *Beardmore v. Jacobson*, No. 4:13-CV-361, 2014 WL 3543726, at *5–6 (S.D. Tex. July 14, 2014) (discussing requirements to prove copyright ownership). To establish trademark infringement, Epic Tech must show that (1) it owns a valid and enforceable mark, and (2) Defendants' use of Epic Tech's trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012); 15 U.S.C. § 1114(1); *Rhino Membranes & Coatings Inc. v. Rhino Seamless Membrane Sys., Inc.*, No. CIV. 4:06-CV-2112, 2008 WL 4425583, at *10 (S.D. Tex. Sept. 30, 2008). To establish trade secret misappropriation Epic must show (1) that a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means, (3) and the defendant used the trade secret without the plaintiff's authorization. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App. 2005); *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 267 (5th Cir. 2014) (applying Texas law to conclude that software source code is protectable as a trade secret). The Court finds that Epic's complaint and exhibits establish the

elements of each claim.

The Court finds that Epic has established that Defendants illegally copied and distributed Legacy's software system, including registered copyrights, trademarks, and trade secrets. Thus, the Court accepts Epic's well-pleaded allegations as true, finds that Lara and Sweeps are in default, and holds that Epic is entitled to a default judgment, appropriate damages, injunctive relief, and attorney's fees.

**B. Monetary Relief**

Epic seeks (1) $150,000 per each of the six copyright violations as willful statutory damages, totaling $900,000; (2) $1,000,000 per each of its four trademarks as willful statutory damages, totaling $4,000,000; (3) a permanent injunction as to Lara and Sweeps use of the copyrights, trademarks, and trade secrets; (4) and attorney's fees. Doc. 42 at 17, 23, 28–31.

As to the monetary damages for copyright and trademark, a copyright owner may elect to recover statutory damages for all infringements "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). A finding of willful infringement may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Similarly, a trademark owner may elect to recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark," or if willful, "not more than $2,000,000 per counterfeit mark." 17 U.S.C. § 1117(c). Because Section 1117(c) sets out only the award range, courts follow the same award guidance for trademarks as for copyrights. *See Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. CV H-16-35, 2016 WL 6436557, at *3 (S.D. Tex. Oct. 31, 2016).

An infringement is "willful" if the infringer "knows his [or her] actions constitute an infringement." *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988);

*Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1002, 1008 (S.D. Tex. 2000) (holding that the same factors apply for both copyright and trademark infringement). But "Actual knowledge is not required; constructive knowledge of infringement satisfies the willfulness standard." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d at 1002. Additional indications of willfulness include: "familiarity with licensing schemes; rebuffed offers to resolve disputes before litigation; 'spare' defense efforts; and lack of effort to avoid infringement." *Future World Elecs., LLC v. Over Drive Mktg., LLC*, No. 3:12-CV-2124-B, 2013 WL 5925089, at *4, n.4 (N.D. Tex. Nov. 5, 2013).

To determine the range of the award for both copyright and trademark infringement, courts have considered factors such as: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Id.* at *4 (quoting *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. CIV.A. H–07–0315, 2007 WL 2710479, at *3 (S.D. Tex. Sept. 14, 2007)(awarding $10,000 in statutory damages upon evidence of attorney's fees and costs due to the willfulness of the defendants' conduct and the continued use of the mark after receiving cease and desist letters)). A court may also consider "the expenses saved and profits reaped by the infringer." *Future World Elecs., LLC*, 2013 WL 5925089, at *4 (quoting *Playboy Enter., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1176 (N.D. Tex. 1997)).

The Court finds that Lara and Sweeps willfully infringed upon Epic's copyrights and trademarks because they were familiar with licensing schemes, made spare defense efforts, and did not try to avoid infringement. According to the depositions of Cavazos, Schappel, and Frank, Lara and Sweeps understood licensing schemes well enough to license and maintain the Falcon

sweepstakes system in Texas, Florida, and North Carolina. Doc. 2-1 at Ex. 3–5. Lara and Sweeps made spare defense efforts by failing to file an answer. And according to Schappel's deposition testimony, Lara did not try to avoid infringement after being notified of the lawsuit in North Carolina. Doc. 2-1 at 326–27. Constructively, the Court may presume Lara and Sweeps knew they were copying and distributing the Falcon sweepstakes system without their own Legacy license. *See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d at 1002; *Future World Elecs., LLC*, 2013 WL 5925089, at *4 n.4.

To determine the damage award, the Court considered the willfulness of Lara and Sweeps's conduct; the deterrent effect of an award on both the Lara and Sweeps and on others; the value of the copyrights and trademarks per Quinn's declaration that it was costly to design, market, and distribute the Legacy system, Doc. 2-1 at 11; that Lara and Sweeps has not cooperated in providing necessary records to assess the value of the infringing material; the losses Epic sustained of $50,000 per month or $15 million of total loses, the 50% licensing scheme at North Loop, *id.* at Ex. 3, and the 5% licensing scheme elsewhere, *id.* at Ex. 4 & 5; and the argument of counsel at the November 15 hearing. *See Future World Elecs., LLC*, 2013 WL 5925089, at *4.

Based upon the above factors and evidence, the Court finds that the award for each of six copyright infringements should be $150,000, totaling $900,000; and the award for each of four trademark infringements should be $1,000,000, totaling $4,000,000. Accordingly, Epic is entitled to total damages of $4,900,000.

### C. Permanent Injunction

Epic also requests a permanent injunction as to Lara and Sweeps's use of the copyrights, trademarks, and trade secrets. Doc. 42 at 28. Specifically, they request that Lara and Sweeps, and

any entity they control be enjoined from the following:

   A. Using, disclosing, copying, sharing, relocating, transferring, or distributing to any individuals or entities [Epic's] trade secrets, confidential and propriety information, or other information relating to [Epic's] gaming software, including, but not limited to, any Epic Tech Games, and any computer servers containing Epic Tech Games or related software;
   B. Offering, sponsoring, or assisting others in offering or sponsoring any sweepstake promotions that use [Epic's] software, or are derived from [Epic's] software.

*Id.* at 31. Epic asserts that Court may enter a permanent injunction for copyright infringement under 17 U.S.C. § 502(a), for trademark infringement under 15 U.S.C. § 1116(a), and to prevent further misappropriation of trade secrets under Texas Civil Practice and Remedies Code Section 134A.003. The Court agrees.

The requirements for a permanent injunction for copyright and trademark infringement are substantially the same. For a permanent injunction under Section 502 copyright infringement, a party must show: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *Malibu Media, LLC v. Gonzales*, CV H-16-2406, 2017 WL 2985641, at *4 (S.D. Tex. July 13, 2017) (citing *DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). For a permanent injunction for Section 1116(a) trademark infringement, a party must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 714 (S.D. Tex. 2013) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Elements (2)–(4) are the same, though elements (1) initially appear different.

While elements (1) appear different, they are substantially the same. The Fifth Circuit has held that showing success of the merits meets the irreparable injury requirement, for the purposes of an injunction. Specifically, it has said that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." *Clearline Techs. Ltd.*, 948 F. Supp. 2d at 715 (citing *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting 1 McCarthy on Trademarks and Unfair Competition § 30:2). By showing a likelihood of confusion, one of the elements required to prove the merits of trademark infringement, a plaintiff shows irreparable injury. *See id.* Thus, by partial success on the merits, the plaintiff meets the irreparable injury requirement of a trademark injunction. And success on the merits is the requirement of a copyright injunction. Thus, elements (1) of both copyright and trademark infringements are substantially the same. *See id.*; *see also Chevron Intellectual Prop., L.L.C. v. Allen*, 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009) (finding a permanent injunction for default in trademark infringement case, using the same factors as copyright infringement). And so the Court may use the copyright test to determine if a permanent injunction is warranted for both the infringed copyrights and trademarks.

Also "the 'usual equitable order' in a trade secret misappropriation case is a perpetual injunction against the wrongdoer." *Halliburton Energy Services, Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 257 (Tex. App.—Dallas 2014, no pet.). The purpose of a trade secret injunction is to prevent a party from "unfairly profiting from another's expense of time and resources," and "to recognize and enforce higher standards of commercial morality in the business world." *Id.* at 257 (quoting *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 775 (1958)), 259. And the "burden is on the defendant to show that an injunction for a period of time less than perpetual would be sufficient to achieve that end." *Id.* But "[o]nce trade secret information becomes available to the

general public, a party that has been enjoined from using the information due to misappropriation may apply to have the injunction terminated." *Id.* at 259 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003). This Court adopts our sister court's summation of the law.

Here, Epic, by default, has first (1) succeeded on the merits against Lara and Sweeps. Epic also has, second (2), no adequate remedy at law because Epic's injury cannot be fully compensated or measured in a dollar amount because the extent of distribution throughout Texas, North Carolina, and Florida is not fully measured. *See Atl. Recording Corp. v. Anderson*, No. H–06–3578, 2008 WL 2316551, at *10 (S.D. Tex. Mar. 12, 2008). Without enjoining Lara and Sweeps from further infringing on Epic's copyrighted and trademarked content, Epic would remain vulnerable to continued infringement. Third (3), the injunction does not burden Lara and Sweeps, as they are merely required to comply with the law, and fourth (4), the public interest is served by upholding Epic's copyright and trademark protections. And the Court sees no reason to vary from the "usual equitable order" that trade secret misappropriation results in a perpetual injunction against the wrongdoer. *Halliburton Energy Services, Inc.*, 444 S.W.3d at 257.

The Court finds that Epic has shown it is entitled to injunctive relief based on Lara and Sweeps violation of federal copyright and trademark law along with state trade secret law. Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by Epic, rather than to enjoin all possible breaches of the law. Fed. R. Civ. P. 65(d); *see Daniels Health Sciences, L.L.C. v. Vascular Health Sciences*, L.L.C., 710 F.3d 579, 587 (5th Cir. 2013). The Court has reviewed the injunction Epic proposed and finds that it is not over-broad and merely enjoins Lara and Sweeps from engaging in further offending conduct. The Court GRANTS Epic's request for an injunction.

### D. Attorney's Fees

Epic requests an award of attorney's fees for copyright infringement under 17 U.S.C. § 505 and trademark infringement under 15 U.S.C. § 1117, in an amount to be determined after the judgment. A court "may allow the recovery of full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party" as a remedy for copyright infringement. 17 U.S.C. § 505. The prevailing party in a default judgment is the party that brings the default judgment. *Malibu Media, LLC v. Gonzales*, 2017 WL 2985641, at *5. And "[a]lthough attorney's fees are awarded in the trial court's discretion, [in copyright cases] they are the rule rather than the exception and should be awarded routinely." *Beardmore v. Jacobson*, 2016 WL 1253219, at *1 (citing *Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 483 (5th Cir. 2003)). Here, through the grant of a default judgment, Epic has succeeded on all of their claims, and is the prevailing party entitled to an award of attorney's fees under 17 U.S.C. § 505.

But attorney's fees are awarded in trademark cases only "in exceptional cases . . . to the prevailing party." 15 U.S.C. § 1117. To merit an award of attorney's fees for trademark infringement, "[t]he prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence. An exceptional case involves acts that can be called 'malicious,' 'fraudulent,' 'deliberate,' or willful.'" *Bulbs 4 E. Side, Inc. v. Ricks*, No. 4:14-CV-03672, 2017 WL 3055359, at *3 (S.D. Tex. July 18, 2017) (citing *Schlotzsky's LTD. V. Sterling Purchasing and Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2009)). Thus, the prevailing party must show more than bad faith. *See id.* (citing *Bd. Of Supervisors for La. State Unix. Agric. & Mech. Coll. V. Smack Apparel Co*, 550 F.3d 465, 491 (5th Cir. 2008)). Here, based upon our earlier finding that Lara and Sweeps willfully violated Epic's trademarks, the Court may also award them attorney's fees under 15 U.S.C. § 1117.

Accordingly, the Court ORDERS that Epic shall recover attorney's fees from Lara and Sweeps for both copyright and trademark infringement and shall provide such proof by way of affidavit and exhibits. *See Christus Health Care Sys., Inc. v. Am. Consultants RX, Inc.*, SA:12-CV-1221-DAE, 2014 WL 1092096, at *6 (W.D. Tex. Mar. 18, 2014) (calculating attorney's fees for copyright and trademark infringement together under the loadstar method).

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Epic's motion for default judgment is **GRANTED.** Docs. 42. Accordingly, the Court

**ORDERS** the following:

1. Judgment by default is granted in favor of Epic against Lara and Sweeps. A judgment shall issue separately.

2. Epic shall recover copyright statutory damages under 17 U.S.C. § 504(c) from Lara and Sweeps in the amount of $900,000.

3. Epic shall recover trademark statutory damages under 17 U.S.C. § 1117 from Lara and Sweeps in the amount of $4,000,000.

4. Epic shall recover attorney's fees from Lara and Sweeps and shall provide such proof by way of affidavit and exhibits within fourteen (14) days of this order.

5. Epic is entitled to recover from Lara and Sweeps an award of court costs and post-judgment interest on the amounts awarded herein at an annual rate of 5% from the date of this Judgment until paid.

6. Lara and Sweeps are enjoined from using sweepstakes software as follows:

a. Using, disclosing, copying, sharing, relocating, transferring, or distributing to any individuals or entities Epic Tech, LLC's trade secrets, confidential and propriety

information, or other information relating to Epic Tech, LLC's gaming software, including, but not limited to, any Epic Tech Games, and any computer servers containing Epic Tech Games or related software;

b. Offering, sponsoring, or assisting others in offering or sponsoring any sweepstake promotions that use Epic Tech, LLC's software, or are derived from Epic Tech, LLC's software.

SIGNED at Houston, Texas, this 29th day of November, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE